# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DANIEL C. PIPPEN,

                Petitioner,          :    Case No. 1:14-cv-429

    - vs -                       District Judge Michael R. Barrett
                                      Magistrate Judge Michael R. Merz

CHARLOTTE JENKINS, Warden,
 Hocking Correctional Institution,
                                :

              Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits.  Pippen brings this action pursuant to 28 U.S.C. § 2254 and seeks relief from his conviction in the Scioto County Common Pleas Court and consequent sentence to twenty-seven years imprisonment, presently being served in Respondent's custody.  He pleads the following grounds for relief:

> **Ground One:**  Whether the Petitioner is being held in violation of the Due Process Clause of the Fourteenth Amendment where the evidence cannot fairly be deemed sufficient to have established guilt beyond a reasonable doubt.

(Petition, Doc. No. 4, PageID[1] 35.)

---

[1]  When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.

**Procedural History**

Pippen was indicted by the Scioto County grand jury on ten drug-related charges (Indictment, Return of Writ, Doc. No. 20-1, PageID 121 et seq.).  Over Pippen's objection, his case was consolidated with those of his co-defendants for trial.  The drug evidence was seized from 518 Sixth Street in Portsmouth, Ohio, and Pippen's motion to suppress that evidence was denied.  During trial Counts 5 and 6 relating to cocaine were dismissed and the jury convicted Pippen on the remaining charges.  The trial judge sentenced Pippen to a total of twenty-seven years confinement.

Pippen appealed to the Fourth District Court of Appeals which affirmed the convictions but remanded for resentencing.  *State v. Pippen*, 2012-Ohio-4692, 2012 Ohio App. LEXIS 4092 (4th Dist. Sept. 25, 2012).  Although there were subsequent appeals from the re-sentencing, they are not relevant to the instant case.  The Supreme Court of Ohio eventually declined jurisdiction. *State v. Pippen*, 135 Ohio St. 3d 1459 (2013).  Pippen then timely invoked this Court's habeas corpus jurisdiction.

# OPINION

In his only Ground for Relief, Pippen asserts that his conviction is not supported by sufficient evidence.  The State defends the convictions on the merits, interposing no procedural defenses.

**Legal Standard**

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

> favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); accord *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam).*

   A habeas court cannot consider post-trial evidence in deciding a *Jackson v. Virginia*

4

claim. *McDaniel v. Brown*, 558 U.S. 120 (2010).

> In order to demonstrate that the state court's decision was based on
> an unreasonable determination of the facts under § 2254(d)(2), a
> petitioner must both establish the "unreasonable determination"
> and show "that the resulting state court decision was 'based on' that
> unreasonable determination."

*Titlow v. Burt*, 680 F.3d 577, 585 (6th Cir. 2012)(rev'd on another issue *Burt v. Titlow*, 134 S. Ct. 10) quoting *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

"On habeas review pursuant to § 2254, a 'court faced with a record of historical facts that supports conflicting inferences [and *a fortiori* findings] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Blackmon v. Booker*, 696 F. 3d 536, 538 (6th Cir. 2012), *quoting McDaniel v. Brown*, 558 U.S. 120 (2010).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

**The State Court Decision**

In deciding this case on direct appeal, the Fourth District wrote:

> **[\*P32]** Here, there was substantial evidence upon which the jury
> could reasonably conclude the state had proven all elements of
> aggravated trafficking in drugs beyond a reasonable doubt.

5

**[\*P33]**  Timberlake testified about the various controlled substances law enforcement recovered from 518 Sixth Street. Pippen was present in the house when law enforcement recovered these.

**[\*P34]**  Megan Snyder, a forensic chemist, testified at great length about the chemical analyses she performed on each substance, identifying whether it was a controlled substance, and noting the amount of each substance. Snyder testified there were 1,824 pills that contained oxycodone (oxycodone hydrochloride). She also testified, based upon the maximum daily dosage of 90 milligrams for oxycodone and oxycodone's "bulk amount" being five times the maximum daily dosage, the pills were 121.6 times the bulk amount of oxycodone.

**[\*P35]**  Regarding the proximity of 518 Sixth Street to a school, Melinda Davis testified the residence was within 1000' of a school at which she was the principal.

**[\*P36]**  Again, there were digital scales in plain view. There was $3,090 on the floor of the upstairs bedroom. In total, there was $16,803 in cash within the house, though only one of five defendants was ostensibly employed. In addition to the 1,824 oxycodone pills, there was heroin, cocaine, and marihuana recovered from the residence. Given the sheer quantity of the oxycodone recovered, and the other evidence, it was reasonable for the jury to conclude Pippen was involved in preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing the oxycodone. It was also reasonable for the jury to conclude Pippen intended to sell or resell the oxycodone, or he knew or had reasonable cause to believe another person intended to sell or resell the oxycodone.

**[\*P37]**  Although the case against Pippen and his co-defendants is based entirely upon circumstantial evidence, circumstantial evidence is, by itself, a sufficient basis for a conviction. *Bostwick*, 4th Dist. No. 10CA3382, 2011 Ohio 3671, at ¶ 17, quoting *State v. Smith*, 4th Dist. No. 09CA29, 2010 Ohio 4507, at ¶ 44, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

**[\*P38]**  Addressing Pippen's' contention that the state failed to prove possession, even constructive possession, we disagree. Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989); *State v. Fry*, 4th Dist. No. 03CA26, 2004 Ohio 5747, ¶ 39. "Actual possession exists when

6

the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession." *Fry* at ¶ 39, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, and *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

**[\*P39]** This court has held that, "[f]or constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *State v. Harrington*, 4th Dist. No. 05CA3038, 2006 Ohio 4388, at ¶ 15, citing *Hankerson* at 91. Further, "two or more persons may have joint constructive possession of a particular item." *State v. Cooper*, 3d Dist. No. 9-06-49, 2007 Ohio 4937, at ¶ 25, citing *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist. 1993); *State v. Riggs*, 4th Dist. No. 98CA39, 1999 Ohio App. LEXIS 4327, 1999 WL 727952 (Sept. 13, 1999). "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it." *State v. Reed*, 2d. Dist. No. 2002-CA-30, 2003 Ohio 5413, at ¶ 19.

**[\*P40]** Pippen's' argument is his mere proximity to various controlled substances does not conclusively establish he possessed them. R.C. 2925.01(K) provides, "'[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." That is, "a defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession. However, a defendant's proximity to drugs may constitute some evidence of constructive possession. Mere presence in the vicinity of illegal drugs, *coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession*." (Internal citations omitted, emphasis added.) *Riggs*, 4th Dist. No. 98CA39, 1999 Ohio App. LEXIS 4327, 1999 WL 727952, at \*5.

**[\*P41]** In *State v. Harrington*, the defendant's proximity to a quantity of cocaine, coupled with his immediate denial of any wrongdoing and false statements, permitted a jury to infer the defendant knew the cocaine was there. *Harrington* at ¶ 18, 24. We found this evidence sufficient to establish the defendant knew of the cocaine and he had the ability to exercise control over it,

demonstrating constructive possession. *Id*. at ¶ 24. We also found the defendant's convictions for possession and trafficking in cocaine were not against the manifest weight of the evidence. *Id*. at ¶ 26.

**[\*P42]** In *State v. New*, 4th Dist. No. 08CA9, 2009 Ohio 2632, the state presented evidence of recorded telephone conversations between the defendant and her boyfriend that indicated she knew there were drugs in the house. During a phone call, the defendant discussed with her boyfriend specific items in the home the police had recovered, such as a coffee can with a false bottom that contained cocaine, a plate with a razor blade that had cocaine residue on it, and pictures of the defendant, her boyfriend, and a third party holding large sums of cash. *New* at ¶ 16, 17. Given the defendant's presence in the house, coupled with her statements about specific items related to controlled substances, she knew where the cocaine was kept in the residence, and a finding that she constructively possessed the cocaine was not against the manifest weight of the evidence. *Id*. at ¶ 18.

**[\*P43]** Likewise, in *Riggs*, 4th Dist. No. 98CA39, 1999 Ohio App. LEXIS 4327, 1999 WL 727952, we found the defendant's proximity to controlled substances in the passenger compartment of a vehicle, coupled with the vast amount of controlled substances and paraphernalia within the vehicle was sufficient to establish constructive possession. Law enforcement recovered cocaine in a bag behind the passenger's seat; a cocaine straw and a plastic container with marihuana residue beside the defendant's seat; a mirror with cocaine residue under the passenger's seat; numerous marihuana roaches and marihuana joints throughout the vehicle, many of which were in the defendant's plain view. *Id*. Thus, the defendant's proximity, coupled with the vast amount of drugs, some of which were in plain view, permitted the jury to find he knowingly possessed the drugs. *Id*.

**[\*P44]** The present case is akin to *Riggs*. "The presence of such a vast amount of drug evidence in the [house] supports an inference that [Pippen] knew about the presence of the drugs and that he, along with his [co-defendants], exercised control over each of the items found." *Riggs*, 4th Dist. No. 98CA39, 1999 Ohio App. LEXIS 4327, 1999 WL 727952, at \*5, citing *State v. Soto*, 8th Dist. No. 57301, 1990 Ohio App. LEXIS 4330, 1990 WL 145651 (Oct. 4, 1990). Here, there were drugs scattered throughout the entire house: 1,824 oxycodone pills, over 100 grams of marihuana, heroin, cocaine, and traces of codeine and morphine. There were digital scales in plain view in the kitchen. There was over $16,000

cash in a house where four of the five occupants were unemployed. Considering all of this evidence together, the jury could properly infer Pippen knew there were controlled substances in the house and he was capable of exercising dominion or control over them, establishing his constructive possession of the controlled substances. Thus, the jury's findings that Pippen knowingly possessed the various controlled substances were not against the manifest weight of the evidence.

 [*P45]  Considering the totality of the evidence, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of aggravated trafficking in drugs beyond a reasonable doubt. We cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we affirm Pippen's conviction for aggravated trafficking in drugs.

### b. Trafficking in Marihuana

 [*P46]  Timberlake testified law enforcement had recovered a bag of marihuana, which contained smaller bags of marihuana. There were also small amounts of marihuana in other containers. Snyder testified the chemical analyses revealed the substance was indeed marihuana and there was 113.3 grams of marihuana total. Again, Davis' testimony was the house was within 1,000 feet of a school.

 [*P47]  No one testified the marihuana was for personal use. Given the quantity of the marihuana, the fact that it was stored in smaller packages, and its presence of marihuana residue on the digital scale, it was reasonable to believe Pippen was trafficking the marihuana.

 [*P48]  Considering the evidence as a whole, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of trafficking in marihuana beyond a reasonable doubt. We cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we affirm Pippen's conviction for trafficking in marihuana.[3]

### Footnote

3 The jury's finding that the marihuana was "less than bulk amount" is inconsequential because "less than bulk amount" is not an aggravating factor; in fact the statute does not refer to a bulk amount of marihuana.

### c. Trafficking in Heroin

 **[*P49]**  Similarly, Timberlake testified law enforcement had recovered 2.8 grams of heroin from the residence. Snyder confirmed through chemical analysis the substance was heroin. Snyder also testified one of the digital scales had trace amounts of heroin on it. Again, according to Davis, the house was within 1,000 feet of a school.

 **[*P50]**  As with the marihuana, no one testified the heroin was for personal use.  Given the heroin residue on the digital scale, it was reasonable to believe Pippen was trafficking heroin.

 **[*P51]**  Considering the totality of the evidence, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of trafficking in heroin beyond a reasonable doubt. We cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we affirm Pippen's conviction for trafficking in heroin.[4]

### Footnote

4 We address the finding that the heroin was "Equal to or greater than bulk amount but less than five (5) times bulk amount," infra.

### 2. Possession of Controlled Substances

R.C. 2925.11 provides:

"(A) No person shall knowingly obtain, possess, or use a controlled substance.

"* * *

"(C) Whoever violates division (A) of this section is guilty of one of the following:

"* * *

"(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

"(e) If the amount of the drug involved equals or exceeds one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

"(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:

"(a) Except as otherwise provided in division (C)(3)(b), (c), (d), (e), (f), or (g) of this section, possession of marihuana is a minor misdemeanor."

"* * *

"(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:

"* *

"(b) If the amount of the drug involved equals or exceeds ten unit doses but is less than fifty unit doses or equals or exceeds one gram but is less than five grams, possession of heroin is a felony of the fourth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender."

 **[\*P52]** When the jury found Pippen trafficked in the controlled substances (oxycodone, heroin, and marihuana) under R.C. 2925.03(A)(2), it implicitly found he possessed the substances, too. For the same reasons Pippen's convictions for trafficking were not against the manifest weight of the evidence, we find his convictions for possession of the controlled substances are not against the manifest weight of the evidence either. Thus, we affirm Pippen's convictions for aggravated possession of drugs, possession of marihuana, and possession of heroin.[5]

FOOTNOTES

5 Again, we discuss the errors with the verdict forms, infra.

### 3. Possessing Criminal Tools

**[\*P53]** R.C. 2923.24(A) provides, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Whoever violates that section is guilty of possessing criminal tools. R.C. 2923.24(C).

**[\*P54]** As with Pippen's convictions for possession of controlled substances, there was substantial evidence upon which a jury could find Pippen possessed the digital scales found in the kitchen. The fact that the scales had residue from marihuana, heroin, codeine, and morphine on them, coupled with the vast amount of drugs recovered from the house, permitted the jury to infer Pippen had a purpose to use the scales criminally: to traffic the controlled substances. Thus, we affirm Pippen's conviction for possessing criminal tools.

**[\*P55]** R.C. 2923.01(G) provides, "When a person is convicted of committing * * * [a] specific offense, the person shall not be convicted of conspiracy involving the same offense." As such, because Pippen was convicted on the principle trafficking offense, he could not be convicted of conspiracy involving the same offense. Contrary to Pippen's argument that he was convicted of conspiracy to traffic in drugs, based upon the following, we conclude that Pippen was not actually convicted on the conspiracy count.

**[\*P56]** Here, the record reflects that although the jury did return a finding of guilt as to the conspiracy to traffic in drugs count, Count 10, the trial court "ordered that Count 10 merge with Count 1 and Count 2." Thus, despite the jury's finding Pippen guilty on Count 10, the trial court did not impose a sentence for Count 10. "A conviction consists of a finding of guilt and a sentence." *State v. Fields*, 1st Dist. No. C-090648, 2010 Ohio 4114, ¶ 7, citing *State v. Henderson*, 58 Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979); *State v. Obsaint*, 1st Dist. No. C-060629, 2007 Ohio 2661, ¶ 24; accord *State v. Whitfield*, 124 Ohio St. 3d 319, 2010 Ohio 2, 922 N.E.2d 182, ¶ 12. As such, although the jury found Pippen guilty of Count 10, the trial court did not impose a sentence for Count 10 and as a result, Pippen was not convicted of Count 10. Therefore, there is no conspiracy conviction to vacate.

[*P57] As to the other counts discussed herein, as we have found Pippen's convictions are not against the manifest weight of the evidence, we find there was also sufficient evidence to convict him of each offense. Accordingly, we overrule Pippen's first assignment of error.

*State v. Pippen, supra.*

## Pippen's Argument

Pippen first argues his case in his Memorandum in Support of the Petition (Doc. No. 4, PageID 46 et seq.)  As found by the Fourth District, "[t]he State's case against the Petitioner was totally circumstantial evidence, based on alleged constructive possession." *Id.* at PageID 48.

Pippen notes that he and his four co-defendants (Tyrone Dixon, Eric Durr, Evan Howard, and Maurice Williams) were found by police, along with the drugs, in the home of Katerine Lansing.  Pippen refers to her as an "alleged probationer"; the record shows the place of seizure and arrest was the address of residence of Catherine Lansing for whom there was an outstanding probation violation arrest warrant.  *State v. Pippen, supra*, ¶¶ 9-14.

Consistent with a totally circumstantial case, there was no direct evidence of Pippen's actually doing anything other than being present with the other four defendants in this apartment where the contraband was found.

Pippen also emphasizes the absence in the record of some circumstantial evidence which, if it had existed, would have bolstered the State's case and by its absence weakened the State's case:  For example, none of the contraband or instruments of trafficking (e.g., the scales) was within Pippen's view when he was arrested, there was no marked currency found, none of the contraband was on his person, and none of his identification was found with either the drugs or

money in the apartment. No drugs were found in the bathroom from which he was emerging when arrested.

Pippen also filed a Traverse (Doc. No. 24) which is difficult to follow because it appears to repeat much of the Return of Writ. The leading point of the Traverse appears to be that the Fourth District relied on the wrong precedent, State v. Riggs, Case No. 98CA39, 1999 WL 727952 (4th Dist. Sept. 13, 1999). *Id.* at 1962. The Traverse does not introduce new facts on which Pippen relies, but argues the applicable law at length.

In several places in the Traverse, Pippen argues his conviction is against the manifest weight of the evidence. However, the manifest weight standard is a matter of state law, not federal constitutional law. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established

before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

At several other points in the Traverse, Pippen contends this Court "has a duty to assess the historic facts. . ." *Id.* at PageID 1980, citing *Blackburn v. Alabama*, 361 U.S. 199 (1960); *Townsend v. Sain*, 372 U.S. 293 (1963); and *Brown v. Allen*, 344 U.S. 443 (1953). That standard

for reviewing state court decisions was completely superseded by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a federal habeas court must defer to the state court findings of fact unless they are shown by clear and convincing evidence to be wrong. And, as noted above, a federal habeas court must, under AEDPA, defer to a state court ruling on a federal constitutional claim unless it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. See, e.g., *Williams v. Taylor, supra.*

### Magistrate Judge's Analysis

The only element of the crimes of conviction which Pippen claims was not supported by sufficient evidence is possession of the controlled substances seized at 518 Sixth Street.

As noted above, state law defines the elements of a crime, but federal constitutional law requires that those elements be proved beyond a reasonable doubt. *Winship, supra; Jackson, supra.* Under Ohio law, possession as an element of the crimes of which Pippen was convicted can be either actual or constructive possession. *State v. Butler*, 42 Ohio St. 3d 174, 176 (1989). In this case the State attempted to prove only constructive possession. Again, under Ohio law constructive possession exists when a person is able to exercise dominion or control of an item, even in the absence of immediate physical possession. *State v. Hankerson*, 70 Ohio St. 2d 87 (1982); *State v. Wolery,* 46 Ohio St. 2d 316 (1976).

In finding the circumstantial evidence in this case was sufficient to establish constructive possession under Ohio law, the Fourth District relied particularly on its own prior decision in *Riggs, supra.* Pippen emphasizes how different his case is from *Riggs* (Memorandum in Support, Doc. No. 4, PageID 51).

16

In *Riggs*, a highway patrol officer stopped a car for speeding. Riggs was driving[2] and his ex-wife was in the front passenger seats. After a drug dog alerted on the car, the trooper searched the passenger compartment and trunk.

> While searching the passenger compartment, Deputy Stackpole found a paper bag behind the passenger side front seat. He and Trooper Roe opened the bag and found marijuana and cocaine inside. The marijuana was in a large plastic bag, while two separate baggies contained the cocaine. A subsequent laboratory test revealed that over fifty-three grams of cocaine were inside the two baggies. In addition, the officers found other evidence of drugs, drug paraphernalia, and drug residue inside the passenger compartment. A cigarette box containing a "coke straw" and a cigarette case containing marijuana cigarettes rested between the driver and passenger seats. Trooper Roe located a Tupperware container with marijuana residue behind the driver's seat, a mirror with cocaine residue underneath the passenger seat, and several marijuana "roaches" throughout the vehicle.

Riggs, supra, at *2.

> The car was registered to Ms. Riggs, but when the trooper searched the trunk, he

> located a tri-fold men's shaving kit. Inside the shaving kit, Trooper Roe found porous blotter paper which later tested positive for LSD. The shaving kit also contained a large plastic baggie of marijuana and another small baggie containing cocaine. Later analysis revealed that the cocaine in the shaving kit weighed over five grams. Also in the trunk, Trooper Roe found a .38 caliber Derringer handgun. The gun was loaded with two live rounds. The appellant told officers at the scene that the gun belonged to him.

*Id.* Both Riggs' were charged. Ms. Riggs pled guilty to felony drug possession. Mr. Riggs was charged with possessing LSD found in the shaving kit and cocaine, along with the weapon. At trial he took the stand and denied any knowledge of what was in the trunk. The jury found him guilty of possessing the cocaine behind the passenger seat. On appeal Riggs argued that since the jury found him not guilty of possessing what was in the trunk, he was also not guilty of

---

[2] Pippen mistakenly says Riggs was a passenger. *Id.*

possessing the cocaine.  In affirming the conviction, the Fourth District noted that two or more persons can have constructive possession of the same thing.  *Id.*  at *4, citing *State v. Mann*, 93 Ohio App. 3d 301 (1993).  It held that while mere presence where drugs are found will not establish constructive possession, "[m]ere presence in the vicinity of illegal drugs, coupled with another factor or factors probative of dominion or control over contraband may establish constructive possession." *Id.*  at *5, citing *State v. Fugate,* Scioto App. No. 97 CA 2546 (4th Dist. Oct. 2, 1998)(unreported), and *State v. Rocker*, Franklin App. No. 93AP-201 (Sept. 1, 1998)(unreported).

Pippen emphasizes the differences between his case and Riggs.  In the former case, the drugs on which Riggs was convicted were found inside the passenger compartment of a car and other drugs – marijuana – were in plain view.  In Riggs case, the jury believed his testimony that he did not know about the drugs in the trunk and acquitted him on those.

Of course in this case Pippen did not testify.  Neither he nor any of the other defendants testified so as to give an innocent explanation for Pippen's presence or even to suggest that he was a mere drug customer who happened to be there when the seizure happened.  Pippen had a right under the Fifth Amendment not to testify and not to have the jury infer guilt from his silence, but neither should be expect the jury to speculate from his silence that there was some innocent explanation for his presence.

Pippen emphasizes that there was not very much marijuana present – only slightly more than the minor misdemeanor amount.  However, there was also heroin and no one testified it was for personal use.  Indeed, its presence on the digital scale supports an inference that it was being dealt.  When it comes to the oxycodone, the intent to deal is virtually inescapable, given the presence of more than 100 times the bulk amount.

Pippen emphasizes that, except for the scale and the $3,000 in cash on the floor of an upstairs bedroom, all the other seized contraband was hidden.  But the fact that something is hidden does not necessarily imply that a person in the premises who cannot see it at the moment is not in control of it.  Money and drugs do not hide themselves.  To hide them, someone must exert control over them.  So far as the record, or at least those portions of it cited by the Fourth District and by Pippen, shows all five of the co-defendants had ready access to the drugs and money.

In sum, as the Fourth District found, there is in this case more than mere presence where drugs are found.  Instead, there is unexplained presence where one hundred times bulk of a drug, other drugs, and drug trafficking equipment are found in the presence of persons who do not reside.  There is a large amount of cash, but only one person present is employed.

Pippen argues other precedent is more similar to his case than *Riggs*.  He particularly relies on *United States v. Pearce,* 912 F.2d 159 (6th Cir. 1990); *United States v. Pena*, 983 F. 2d 71 (6th Cir. 1993); *United States v. Pintado*, 715 F.2d 1501 (11th Cir. 1983); and *United States v. Vasquez-Chan,* 978 F.2d 546 (1992).  It must first be noted that all of these are direct federal appeal cases where the appellate court is directly viewing what the jury did.  A different standard applies in habeas cases; a habeas court must defer both to the jury and to the reviewing state court.  *Brown v. Konteh, supra.*

In *Pearce* the Sixth Circuit upheld a conviction for possession of cocaine, but overturned conspiracy and aiding and abetting convictions. What was missing was sufficient evidence of an agreement between the defendants, not proof of possession.

In *Pena* the circuit court reversed a conviction for aiding and abetting distribution of cocaine found hidden in the spare tire well.  Defendant had stated she felt there was something

illegal in the car, but did not know it was cocaine and the court of appeals found this was insufficient to prove her guilty of intentionally assisting in the distribution.  Again, there was no constructive possession issue.

In *Pintado*, the circuit court reversed a conviction for conspiracy to distribute marijuana. The missing evidence was of the conspiracy; there was no issue of constructive possession. *Vasquez-Chan* is no longer good law; it has been overruled by the Ninth Circuit en banc in *United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010).

The conclusion of the Fourth District Court of Appeals is neither contrary to nor an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 5, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).